IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

SHAWN GREEN,

                                    Plaintiff,

    v.                                                            Civil Action No.
                                                                     9:07-CV-0351 (GTS/DEP)

GARY GREENE, *et al.,*

                                    Defendants.

_____

APPEARANCES:                                      OF COUNSEL:

FOR PLAINTIFF:

SHAWN GREEN, *Pro Se*
97-A-0801
Elmira Correctional Facility
P.O. Box 500
Elmira, NY 14902

FOR DEFENDANTS:

HON. ANDREW M. CUOMO              ROGER W. KINSEY, ESQ.
Attorney General of the                   ASS'T ATTORNEY GENERAL
State of New York
The Capitol
Albany, NY 12224-0341

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

    Plaintiff Shawn Green, a New York State prison inmate who is

proceeding *pro se* and *in forma pauperis*, has commenced this action

pursuant to 42 U.S.C. § 1983, alleging deprivation of his civil rights.  In his complaint plaintiff asserts a host of claims arising from his incarceration based upon events alleged to have occurred largely during 2006 and 2007, naming as defendants several employees of the New York State Department of Correctional Services ("DOCS"), including the superintendent of the prison facility in which he was housed at the relevant times, and requesting both monetary and injunctive relief.

In response to Green's complaint, defendants have moved seeking dismissal of certain of his claims as facially lacking in merit, additionally asserting their entitlement to qualified immunity.  For the reasons set forth below, I recommend that defendants' motion be granted in part, but that plaintiff be permitted to pursue the bulk of his claims in light of the early procedural stage at which the motion is made.

I.    BACKGROUND[1]

Plaintiff is a prison inmate entrusted to the care and custody of DOCS; while he has since been transferred into another facility, at the

_____

[1]    In light of the procedural posture of the case, the following recitation is drawn principally from plaintiff's amended complaint, Dkt. No. 20, the allegations of which have been credited for purposes of the instant motion.  *See Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007)); *see also Cooper v. Pate*, 378 U.S. 546, 546, 84 S. Ct. 1733, 1734 (1964).

time of the events detailed in his complaint plaintiff was designated to the Great Meadow Correctional Facility ("Great Meadow"), located in Comstock, New York.  *See generally* Amended Complaint (Dkt. No. 20). Plaintiff subscribes to the religious beliefs of the Nation of Islam ("NOI"). *Id.* ¶ 17.   At various times during the course of his incarceration at Great Meadow, plaintiff was confined for disciplinary reasons within the Great Meadow special housing unit ("SHU"), where some of the events forming the basis for his claims occurred.

Generally speaking, plaintiff alleges that while incarcerated at Great Meadow he was 1) subjected to unlawful retaliation for having engaged in protected activity; 2) exposed to the use of excessive force; 3) subjected to the issuance of false misbehavior reports and disciplinary action based upon false testimony; 4) denied the ability to attend certain recreation periods and NOI religious observances; 5) deprived of the use of special soap for his diagnosed skin disorder; 6) subjected to a delay in receiving his prescribed medications upon being transferred into the SHU; 7) exposed to conditions alleged by him to have constituted cruel and unusual punishment; and 8) subjected to overcharging in connection with

the purchase of a television for personal use.[2]  *See generally* Amended

Complaint (Dkt. No. 20).

II.    PROCEDURAL HISTORY

Plaintiff commenced this action on April 2, 2007.  Dkt. No. 1.  After

approval of his application for leave to proceed *in forma pauperis* and a

brief but somewhat tortured initial procedural history, plaintiff was granted

leave to submit an amended complaint which was subsequently filed on

February 5, 2008, and remains the operative pleading in this case.  Dkt.

No. 20.  Although in many instances bereft of specifics, plaintiff's

amended complaint gives the appearance of being well organized, setting

forth claims falling into five separate but potentially overlapping

categories, designated by him as 1) retaliation; 2) discrimination; 3) Eighth

Amendment; 4) conspiracy; and 5) breach of contract.  Named as

defendants are in excess of twenty DOCS employees; one of those,

Kenneth McLaughlin, is apparently affiliated in some unspecified way with

the DOCS Central Office Review Committee ("CORC"), while the balance

of them are or were at the relevant times employed at Great Meadow,

---

[2]     To the extent necessary in order to address defendants' specific
arguments, plaintiff's claims will be further detailed in the ensuing portions of this
report.

4

including Darwin LaClair, the superintendent at that facility.  Plaintiff's complaint requests the issuance of declaratory relief, compensatory damages, and the entry of preliminary and permanent injunctions.  *Id.*

Following service, defendants moved on May 29, 2008 seeking dismissal of plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, advancing several grounds for rejection of all or some of plaintiff's claims, arguing that 1) plaintiff's breach of contract cause of action is time-barred, and in any event does not implicate a federal civil rights violation; 2) plaintiff's claims against the CORC and the defendants in their official capacities are barred by the Eleventh Amendment; 3) plaintiff has failed to establish personal involvement on the part of certain of the defendants named in his complaint; 4) several of plaintiff's claims are substantively deficient as a matter of law; 5) plaintiff's injunctive relief claims are barred by 42 U.S.C. § 1983; 6) plaintiff is precluded by the intra-corporate conspiracy doctrine from pursuing his conspiracy claims; and 7) in any event, defendants are entitled to qualified immunity.  Dkt. No. 57.  Plaintiff has since responded in opposition to defendants' motion by affirmation filed on August 11, 2008.  Dkt. No. 60.

Defendants' motion, which is now ripe for determination, has been

referred to me for the issuance of a report and recommendation pursuant

to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule

72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

    A.   Dismissal Motion Standard

A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6)

of the Federal Rules of Civil Procedure, calls upon a court to gauge the

facial sufficiency of that pleading, utilizing as a backdrop a pleading

standard which is particularly unexacting in its requirements.  Rule 8 of the

Federal Rules of Civil Procedure requires only that a complaint contain "a

short and plain statement of the claim showing that the pleader is entitled

to relief."  Fed. R. Civ. P. 8(a)(2).  Absent applicability of a heightened

pleading requirement such as that imposed under Rule 9, a plaintiff is not

required to plead specific factual allegations to support the claim; rather,

"the statement need only 'give the defendant fair notice of what the . . .

claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551

U.S. 89, 127 S. Ct. 2197, 2200 (2007) (quoting *Bell Atlantic Corp. v.

Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964 (2007) (other quotations

omitted)); *cf. Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)

(acknowledging that a plaintiff may properly be required to illuminate a claim with some factual allegations in those contexts where amplification is necessary to establish that the claim is "plausible").  Once the claim has been stated adequately, a plaintiff may present any set of facts consistent with the allegations contained in the complaint to support his or her claim. *Twombly*, 127 S. Ct. at 1969 (observing that the Court's prior decision in *Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99 (1957), "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival").

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true, and draw all inferences in favor of the non-moving party.  *Cooper v. Pate*, 378 U.S. 546, 546, 84 S. Ct. 1733, 1734 (1964); *Miller v. Wolpoff & Abramson, LLP*, 321 F.3d 292, 300 (2d Cir. 2003), *cert. denied*, 540 U.S. 823, 124 S. Ct. 153 (2003); *Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.). The burden undertaken by a party requesting dismissal of a complaint under Rule 12(b)(6) is substantial; the question presented by such a motion is not whether the plaintiff is likely ultimately to prevail, "'but

whether the claimant is entitled to offer evidence to support the claims.'"
*Log On America, Inc. v. Promethean Asset Mgmt. L.L.C.*, 223 F. Supp. 2d
435, 441 (S.D.N.Y. 2001) (quoting *Gant v. Wallingford Bd. of Educ.*, 69
F.3d 669, 673 (2d Cir. 1995) (other quotations omitted)).  Accordingly, a
complaint should be dismissed on a motion brought pursuant to Rule
12(b)(6) only where the plaintiff has failed to provide some basis for the
allegations that support the elements of his or her claim.  *See Twombly*,
127 S. Ct. at 1969, 1974; *see also Patane v. Clark*, 508 F.3d 106, 111-12,
(2d Cir. 2007) ("In order to withstand a motion to dismiss, a complaint
must plead 'enough facts to state a claim for relief that is plausible on its
face.'") (quoting *Twombly*, 127 S. Ct. at 1974).  "While *Twombly* does not
require heightened fact pleading of specifics, it does require enough facts
to 'nudge [plaintiff's] claims across the line from conceivable to plausible.'"
*In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting
*Twombly*, 127 S. Ct. at 1974).

When assessing the sufficiency of a complaint against this
backdrop, particular deference should be afforded to a *pro se* litigant
whose complaint merits a generous construction by the court when
determining whether it states a cognizable cause of action.  *Erickson*, 127

S. Ct. at 2200 ("'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'") (quoting *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976) (internal quotations omitted)); *Davis v. Goord*, 320 F.3d 346, 350 (2d Cir. 2003) (citation omitted); *Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (Hurd, J.), *vacated in part on other grounds*, 317 F. Supp. 2d 160 (N.D.N.Y. 2004) (Hurd, J.).  In the event of a perceived deficiency in a *pro se* plaintiff's complaint, a court should not dismiss without granting leave to amend at least once if there is any indication that a valid claim might be stated.  *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").

### B.    Breach of Contract Claim

Plaintiff's fifth cause of action is denominated as breach of contract. Amended Complaint (Dkt. No. 20) ¶¶ 56-59.  That claim is predicated upon DOCS Directive No. 4921, alleged to have been enacted on January 27, 1989 to address the use of personal televisions in DOCS prison facilities and the ability of prison inmates to order television sets from approved vendors for that purpose.  *Id.* ¶ 56.  Plaintiff asserts that DOCS

9

Directive No. 4921 constituted a binding contract between the DOCS and prison inmates, and that a revision allegedly enacted on April 15, 2002 to that directive represented a breach of that agreement. *Id.*

In their motion, defendants submit that plaintiff's breach of contract cause of action is governed by a three-year statute of limitations, and that because his claim relates to an occurrence predating the filing of this action by more than three years, it is time-barred. Dkt. No. 57 at p. 4. Additionally, defendants argue that in any event plaintiff's breach of contract cause of action is predicated upon violation of a state regulation, a matter which cannot form the basis for a constitutional claim. *Id.* at 8.

The precise nature of plaintiff's claim growing out of the amendment of DOCS Directive No. 4921 is not entirely clear. Defendants interpret the claim as having been raised under section 1983, and correctly note that when addressing claims arising under that section, which does not itself contain a statute of limitations universally governing such causes of action, courts look to the general or residual statute of limitations for personal injury actions under the laws of the forum state. Dkt. No. 57 at p. 4; *see Owens v. Okure*, 488 U.S. 235, 249-50, 109 S. Ct. 573, 582 (1989). Consequently, section 1983 claims brought in New York are subject to a

10

three-year statute of limitations pursuant to New York's provision related to personal injury claims of an otherwise unspecified nature.  N.Y. Civil Practice Law & Rules § 214(5); *see Ormiston v. Nelson*, 117 F. 3d 69, 71 (2d Cir. 1997) (quoting *Owens*); *Pinaud v. County of Suffolk,* 52 F.3d 1139, 1156 (2d Cir. 1995); *Lugo v. Senkowski,* 114 F. Supp. 2d 111, 113 (N.D.N.Y. 2000) (Kahn, J.) (citing *Pinaud*, 52 F.3d at 1156 and *Owens*, 109 S. Ct. at 582).  Plaintiff's claim is based upon an amendment to DOCS Directive No. 4921 which, by his own account, was adopted on April 15, 2002, well prior to the three-year reach back provision of the governing statute of limitations for a claim arising under section 1983. Amended Complaint (Dkt. No. 20) ¶ 56.  The question then becomes whether plaintiff's claim accrued on that date.

While the statute of limitations to be applied to section 1983 claims is derived from state law, and often varies from jurisdiction to jurisdiction, the determination of the proper accrual date to affix in connection with a section 1983 claim is a matter controlled by federal law.  *Ormiston,* 117 F.3d at 71.  Such a claim accrues when a plaintiff "knows or has reason to know of the injury which is the basis of his [or her] action."  *Singleton v. City of N.Y.*, 632 F.2d 185, 191 (2d Cir. 1980) (internal quotations and

citation omitted), *cert denied*, 450 U.S. 920, 101 S. Ct. 1368 (1981).  In this instance, it is clear that any section 1983 claim growing out of the amendment of the DOCS directive accrued on April 15, 2002, when plaintiff knew or reasonably should have became aware of the disputed revision, and his complaint sets forth no basis to find the governing statute of limitations should be tolled.  Accordingly, to the extent it is regarded as asserting a claim under section 1983, plaintiff's fifth cause of action is therefore time-barred.

In addition to being patently untimely, if deemed to arise under Section 1983, plaintiff's fifth claim is also facially lacking in merit.  As defendants correctly assert, any constitutional claim predicated upon violation of a DOCS directive is not cognizable under 42 U.S.C. § 1983. *Bolden v. Alston,* 810 F.2d 353, 358 (2d Cir. 1987), cert. denied, 484 U.S. 896 (1987); *Russell v. Selsky*, 35 F.3d 55, 60 (2d Cir. 1994).  To the extent that plaintiff's fifth cause of action may be asserting a violation of section 1983 predicated upon an alleged breach of contract, such a claim similarly is not actionable*.  City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 728, 119 S. Ct. 1624, 1648 (1999); *see also Browdy v. Karpe*, No. 3:00 CV 1866, 2004 WL 2203464, at *4 (D. Conn.

Sept. 20, 2004) (citing *Batista v. Rodriguez*, 702 F.2d 393, 398 (2d Cir. 1983)).

Plaintiff's fifth cause of action could be interpreted as stating a pendent state law cause of action sounding in breach of contract. Such a claim would be subject to a six-year statute of limitations and, if potentially meritorious, would thus not be untimely under the present circumstances. N.Y. Civil Procedure Law & Rules § 213(2); *see Guilbert v. Gardner*, 480 F.3d 140, 149 (2d Cir. 2007). There are several reasons why such a claim would nonetheless be subject to dismissal. Initially, the potentially liable defendant in this case, as the contracting party, would be DOCS; that agency, however, is not amenable to suits for damages in this court under the circumstances now presented. *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 414 (2d Cir. 1999). More fundamentally, as a unilaterally promulgated directive by that agency the DOCS directive lacks the trappings of a contract enforceable at law. The pleading requirements applicable to such a claim are admittedly modest; to state a claim for breach of contract under New York law, a complaint must allege 1) the existence of an agreement 2) adequate performance of the contract by the plaintiff, 3) breach of the contract by the defendant, and 4) damages.

13

*Deen v. New School University*, No. 05 Civ 7174, 2007 WL 1032295, at *2 (S.D.N.Y. Mar. 27, 2007).  Plaintiff's complaint in this action fails to meet even these minimal requirements.  Among the shortcomings associated with his breach of contract claim is his failure to allege any agreed consideration, or *quid pro quo*, on the part of plaintiff and other inmates reflected in the directive in return for the alleged promises contained therein.  Moreover, plaintiff's complaint lacks any allegation of performance on his part under the purported contract.

In sum, insofar as plaintiffs' fifth cause of action alleges violation of section 1983, while inventive, this claim is both considerably untimely and is wholly devoid of merit.  Likewise, any state law claim for breach of contract fails as a matter of law.  Plaintiff's fifth cause of action therefore fails to state a plausible claim sufficient to survive defendants' dismissal motion.

    C.    Eleventh Amendment/Sovereign Immunity

Various of the individual defendants named in plaintiff's amended complaint are sued both individually and in their official capacities.  In their motion, defendants urge dismissal of plaintiff's official capacity claims as representing little more than a transparent attempt to obtain recovery of

damages against the state.

The Eleventh Amendment protects a state against suits brought in federal court by citizens of that state, regardless of the nature of the relief sought. *Alabama v. Pugh*, 438 U.S. 781, 782, 98 S. Ct. 3057, 3057-58 (1978). This absolute immunity which states enjoy under the Eleventh Amendment extends both to state agencies, and in favor of state officials sued for damages in their official capacities when the essence of the claim involved seeks recovery from the state as the real party in interest.[3] *Richards v. State of N.Y. Appellate Division, Second Dep't*, 597 F. Supp. 689, 691 (E.D.N.Y. 1984) (citing *Pugh*, 98 S. Ct. at 3057-58 and *Cory v. White*, 457 U.S. 85, 89-91, 102 S. Ct. 2325, 2328-29 (1982)). To the extent that a state official is sued for damages in his official capacity the official is entitled to invoke the Eleventh Amendment immunity belonging to the state.[4] *Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 361-62

---

[3]     In a broader sense, this portion of defendants' motion implicates the sovereign immunity enjoyed by the State. As the Supreme Court has reaffirmed relatively recently, the sovereign immunity enjoyed by the states is deeply rooted, having been recognized in this country even prior to ratification of the Constitution, and is neither dependent upon nor defined by the Eleventh Amendment. *Northern Ins. Co. of N.Y. v. Chatham County*, 547 U.S. 189, 193, 126 S. Ct. 1689, 1693 (2006).

[4]     By contrast, the Eleventh Amendment does not establish a barrier against suits seeking to impose individual or personal liability on state officials under section 1983. *See Hafer*, 502 U.S. at 30-31, 112 S. Ct. at 364.

(1991); *Kentucky v. Graham*, 473 U.S. 159, 166-67, 105 S. Ct. 3099, 3105-06 (1985).

Since plaintiff's damage claims against the named defendants in their official capacities are in reality claims against the State of New York, thus exemplifying those against which the Eleventh Amendment protects, they are subject to dismissal.  *Daisernia v. State of N.Y.*, 582 F. Supp. 792, 798 (N.D.N.Y. 1984) (McCurn, J.).  I therefore recommend this portion of defendants' motion be granted, and that plaintiff's damage claim against the defendants in their capacities as state officials be dismissed. [5]

   D.   Personal Involvement

Defendants next argue that plaintiff's claims against defendants McLaughlin, Greene, LaClair, Woods and Potter are subject to dismissal based upon Green's failure to allege their personal involvement in the constitutional deprivations set forth in his complaint.  *See* Defendants' Memorandum (Dkt. No. 57) at p. 6.  According to defendants, the involvement of those individuals in the matters giving rise to plaintiff's

_____

   [5]    Neither the Eleventh Amendment nor sovereign immunity precludes the naming of state workers in their official capacities for purposes of the issuance of injunctive relief.  *Gowins v. Greiner*, No 01 Civ 6933, 2002 WL 1770772, at *3 (S.D.N.Y. July 21, 2002), citing *Ex Parte Young*, 209 U.S. 123, 159-60, 28 S. Ct. 441 (1908).

claims is limited to their alleged failure to intercede on his behalf, or to properly investigate grievances presented to them by Green.  *Id.* at p. 8.

Personal involvement of a defendant in an alleged constitutional deprivation is a prerequisite to an award of damages under section 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087, 98 S. Ct. 1282 (1978)).  In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant. *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

Certain of defendants named in plaintiff's complaint are supervisory DOCS employees.  A supervisor cannot be liable for damages under section 1983 solely by virtue of being a supervisor; there is no *respondeat superior* liability under section 1983.  *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); ("[M]ere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim.") (citations omitted); *see also*, *e.g.*, *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987) (dismissal appropriate where

plaintiff does no more than allege that defendant was in charge of prison);

*Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (same).  *Wright*, 21

F.3d at 501.  Culpability on the part of a supervisory official for a civil

rights violation can, however, be established in one of several ways,

including when that individual 1) has directly participated in the challenged

conduct; 2) after learning of the violation through a report or appeal, has

failed to remedy the wrong; 3) created or allowed to continue a policy or

custom under which unconstitutional practices occurred; 4) was grossly

negligent in managing the subordinates who caused the unlawful event; or

5) failed to act on information indicating that unconstitutional acts were

occurring.  *Iqbal*, 490 F.3d at 152-53 (2d Cir. 2007); *see also Richardson*,

347 F.3d at 435; *Wright*, 21 F.3d at 501; *Williams v. Smith* 781 F.2d 319,

323-24 (2d Cir. 1986).  It should be noted, however, that mere vague and

conclusory allegations that a supervisor has failed to train or properly

monitor the actions of subordinate employees will not suffice to establish

the requisite personal involvement and support a finding of liability.  *Pettus*

*v. Morgenthau*, 554 F.3d 293, 300 (2d Cir. 2009) ("To the extent that [a]

complaint attempts to assert a failure-to-supervise claim . . .  [that claim is

insufficient where] it lacks any hint that [the supervisor] acted with

deliberate indifference to the possibility that his subordinates would violate [plaintiff's] constitutional rights.").

> 1.   Kenneth McLaughlin

Defendant Kenneth McLaughlin is specifically referenced by name only once in the portion of plaintiff's complaint wherein he outlines his claims.  *See* Amended Complaint (Dkt. No. 20) ¶ 28.  There, plaintiff alleges that McLaughlin failed to remedy constitutional violations raised in complaints and grievance appeals.  *Id.*  The court assumes, although this is far from clear, that in light of his apparent affiliation with that body, McLaughlin is also implicated in certain other portions of plaintiff's complaint in which he alleges that the CORC failed to remedy violations after learning of them through grievance appeals.  *See, e.g.,* Amended Complaint (Dkt. No. 20) ¶¶ 9, 19, 29, 51, and 59.

The fact that a defendant has been involved in the denial of a grievance regarding a past violation, as distinct from one which is ongoing, alone is an insufficient basis upon which to find liability under section 1983, particularly in the absence of a showing that the party defendant is well-positioned to remedy the violation.  *See, Odom v. Clalero,* No. 06 Civ 15527, 2008 WL 2735868, at *7 (S.D.N.Y. July 10,

2008); *Harnett v. Bar,* 538 F. Supp. 2d 511, 524 (N.D.N.Y. 2008).   *See*

Amended Complaint (Dkt. No. 20).  According to plaintiff's amended

complaint, all of the claims which were the subject of grievances filed by

him and resulting in appeals to the CORC relate to finite, transitory

matters.  Accordingly, even assuming defendant McLaughlin had become

aware through his role at the CORC of the existence of a constitutional

violation previously occurring to the plaintiff, there is no basis to conclude

that after learning of the violation he was in a position to remedy the

wrong, but failed to do so.  Under these circumstances, I therefore

recommend dismissal of plaintiff's claims as against Kenneth McLaughlin

based upon lack of personal involvement.

> 2.   <u>Gary Greene</u>

Like McLaughlin defendant Gary Greene, the superintendent at

Great Meadow during all or some of the relevant times, is mentioned only

once by name in the body of plaintiff's amended complaint.  Amended

Complaint (Dkt. No. 20) ¶ 58.  That portion of the complaint relates solely

to a claim which I have recommended be dismissed.[6]  Moreover, plaintiff's

breach of contract cause of action, in connection with which defendant

---

[6]     *See* pp. 9 - 14, *ante.*

Greene is named, is based upon a revision to an agency-wide DOCS directive, and there is no indication of any authority on the part of Greene as a facility superintendent to intercede in connection with such a DOCS directive revision.  Accordingly, I recommend dismissal of plaintiff's claims against defendant Greene on the additional, independent basis of lack of personal involvement.

> 3.    Darwin LaClair

Defendant Darwin LaClair, also a superintendent at Great Meadow at all or some of the relevant times, is named in several portions of plaintiff's complaint.  *See, e.g.* Amended Complaint (Dkt. No. 20) ¶¶ 18, 28, 50, 58.  Plaintiff alleges that as superintendent defendant LaClair was grossly negligent in supervising subordinates and tolerated the policies and practices under which the constitutional violations occurred.  *Id.* These allegations are sufficient, at this juncture, to implicate personal involvement on the part of defendant LaClair.  *Iqbal*, 490 F.3d at 158; *see also Richardson*, 347 F.3d at 435; *Wright*, 21 F.3d at 501; *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986).  I therefore recommend denial of the portion of the defendants' motion seeking dismissal of plaintiff's claims against defendant LaClair on the basis of lack of personal

involvement.

    4.   R.K. Woods

Defendant R.K. Woods, whose official position is not disclosed, is referenced once in plaintiff's complaint, which alleges that Woods and others at Great Meadow "implemented policies/customs that forbid keeplock inmates from wearing long-johns to recreation during cold weather as well as denied general population inmates using the gym access to weight room and shower areas, otherwise accessible by honor block inmates."  Amended Complaint (Dkt. No. 20) ¶ 14.  Defendants' memorandum does not illuminate the basis for their contention that this does not suffice to allege defendant Woods' personal involvement in that alleged constitutional deprivation.  *See* Dkt. No. 57.  Having reviewed the allegation I find that it suffices, at this early procedural stage, to implicate personal involvement on the part that defendant in the constitutional deprivation asserted, and therefore recommend denial of the portion of defendants' motion addressing the personal involvement of defendant Woods.

    5.   Richard W. Potter

Defendant Potter, identified by plaintiff as an "administrative deputy,"

also seeks dismissal based upon lack of personal involvement.  *See*
Amended Complaint (Dkt. No. 20).  That defendant is referenced in a
portion of plaintiff's complaint alleging that Potter "failed to remedy
discrimination, allowed the continuance [sic] of a custom under which
unconstitutional practices occurred and was grossly negligent and
supervision subordinates [sic] after learning of [unlawful discrimination]."
Amended Complaint (Dkt. No. 20) ¶ 18.  The specifics of defendant
Potter's actions and the basis for plaintiff's apparent contention regarding
his knowledge of civil rights violations are not set forth in any detail.  The
allegations against defendant Potter, while admittedly skeletal, appear to
relate to his failure to remedy unlawful discrimination known to him and
the claim that he permitted customs under which a constitutionally
prohibited practice has occurred to persist, and was grossly negligent in
supervision of his subordinates.  In the event of a finding, which cannot be
made at this early stage, that unlawful discrimination and unconstitutional
practices did in fact occur at Great Meadow, as claimed by plaintiff, these
allegations suffice to potentially establish defendant Potter's personal
involvement in those constitutional violations.  *Iqbal*, 490 F.3d at 158; *see
also Richardson*, 347 F.3d at 435; *Wright*, 21 F.3d at 501; *Williams*, 781

23

F.2d at 323-24.

### E.   Dismissal On The Merits

In their motion defendants assert that various of plaintiff's claims are facially lacking in merit.  Bearing in mind that at this early procedural juncture the court is tasked only with determining whether plaintiff has stated a plausible claim and should be afforded the opportunity to offer proof in support of the claim, I now turn to each of the specific arguments raised.

### 1.   Misbehavior Reports/False Testimony

Among plaintiff's allegations is the claim that certain defendants issued false misbehavior reports to him and gave fabricated testimony at subsequent disciplinary proceedings.  *See, e.g.* Amended Complaint (Dkt. No. 20) ¶¶ 6, 34-36.  Defendants argue that those claims are barred under *Heck v. Humphrey,* 512 U.S. 477, 114 S. Ct. 2364 (1994) and *Edwards v. Balisok,* 520 U.S. 641, 117 S. Ct. 1584 (1997), since plaintiff has not alleged that any unfavorable findings resulting from those disciplinary proceedings have been invalidated.  Dkt. No. 57 at pp. 9-10.

To the extent defendant argues that no claim for damages under 42 U.S.C. § 1983 alleging deprivation of procedural due process growing out

24

of a disciplinary proceeding can be pursued until the result of the hearing is overturned or invalidated, defendants paint with an unduly broad brush. It is true, as the Second Circuit has noted, that "[i]n *Edwards*, the Supreme Court held that a due process challenge to a disciplinary hearing that necessarily implied the invalidity of the hearing disposition could not be brought under § 1983 unless it could be shown that the disposition had been invalidated or impugned in a prior proceeding."  *Jimenez v. Goord*, No. 99-0140, 1999 WL 1254510, at *2 (2d Cir. Dec. 8, 1999).  The court went on in *Jiminez* to note, significantly, that "[t]he scope of *Edwards* should be understood as limited to dispositions *involving the overall length of confinement."   Id.* (Emphasis Added).

At this early juncture little is known concerning the disciplinary proceedings at issue, and in particular whether they resulted in adverse findings to the defendant and sanctions which included a recommended loss of good time credits, and whether they were overturned on appeal internally within DOCS or in the state courts, making the issue now raised ill-suited for resolution on a motion to dismiss.  Moreover, even assuming the imposition of sanctions in any of those hearings which included a recommended loss of good time credits and plaintiff's failure to overturn

the results of the hearing, he is nonetheless entitled to bring a claim for damages under section 1983 asserting a procedural due process deprivation provided that he agrees to forfeit any claim he may have challenging the sanctions affecting the length of his imprisonment. *Peralta v. Vasquez*, 467 F.3d 98, 105 (2d Cir. 2006).

Turning to the specifics of plaintiff's allegations, I note that standing alone the mere allegation that a false misbehavior report has been filed against an inmate does not implicate constitutional conduct.  *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997); *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir. 1986), *cert. denied*, 485 U.S. 982, 108 S. Ct. 1273 (1988)).  Plaintiff's further assertion that the false misbehavior reports in issue were prompted by retaliatory animus and relate to his having engaged in protected activity, however, suffices to state a plausible claim for retaliation.  *Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988).

The other aspect of plaintiff's claim growing out of disciplinary proceedings against him relates to false testimony allegedly given in October of 2006 by defendant B. Winchell.  Amended Complaint (Dkt. No. 20) ¶ 35.  The mere allegation that a defendant has given false testimony at a disciplinary hearing, however, fails to support a section 1983 claim for

damages against the witness providing such testimony.  *Cole v. Fischer*, No. 07 Civ. 11096, 2009 WL 130186, at *3 (S.D.N.Y. Jan. 15, 2009) (citations omitted).  I therefore recommend dismissal of the portion of plaintiff's claim against defendant Winchell which is predicated upon his alleged giving of false testimony.

### 2.   Physical Exercise

Defendants seek dismissal of the portion of plaintiff's Eighth Amendment cause of action which is predicated upon the denial of exercise periods, alleging that the claim represents little more than a *de minimis* violation which is not of constitutional proportions.  Dkt. No. 57 at p. 12.

Plaintiff's complaint, as amended, is undeniably vague insofar as it relates to the issue of exercise deprivation.  While the denial of access to gym facilities and equipment is referenced in his retaliation cause of action, it appears to be solely by way of background, setting forth the subject matter of the grievances which, Green contends, precipitated various retaliatory actions on the part of the defendants.  *See* Amended Complaint (Dkt. No. 20) ¶ 7.  Denial of access to the gym facilities, including the weight room and shower areas, is also referenced in the

portion of plaintiff's complaint in which he alleges unlawful discrimination, *id*. ¶ 14, as well as in his Eighth Amendment cause of action, *id.* ¶ 27.

It is true, as defendants argue, that whether the denial to a prison inmate of exercise rises to a level of constitutional significance depends upon the circumstances including, importantly, the duration of the deprivation, and specifically whether the inmate has been denied "all meaningful exercise for a substantial period of time." *Williams v. Goord,* 142 F. Supp. 2d 416, 425 (S.D.N.Y. 2001). Deprivations of exercise for limited periods have been found, in several instances, not to support a constitutional claim under the Eighth Amendment. *See, e.g., Arce v. Walker*, 907 F. Supp. 658, 662 (W.D.N.Y.1995)(Eighth Amendment violated by deprivation of out-of-cell exercise for eighteen out of nineteen days), *rev'd on other grounds*, 139 F.3d 329 (2d Cir. 1998); *Davidson v. Coughlin*, 968 F. Supp. 121, 131 (S.D.N.Y. 1997)(denial of outdoor exercise for fourteen days did not represent cruel and unusual punishment).

At this early juncture, I am unable to say with certainty that plaintiff will be unable to prove any set of circumstances which would establish a constitutionally significant deprivation based upon denial of exercise.

28

Plaintiff may also be able to prove, for example, that the denial was prompted by his having engaged in protected activity, and that it was significantly adverse to support a First Amendment retaliation claim. Accordingly, I recommend that this portion of defendants' motion be denied, concluding that the matter would be better addressed after robust development of the record.  *Iqbal*, 490 F.3d at 178.

        3.    Religious Call Out

Defendants seek dismissal of plaintiff's religious call out claim, alleging that the two instances plaintiff complains of were the result of mere negligent oversights.  Dkt. No. 57 at p. 13.

Without question prison inmates, while not entitled to the full panoply of rights guaranteed under the United States Constitution, retain the First Amendment right of free religious exercise, including to participate in congregate religious services, provided that the exercise of those rights is not inconsistent with the inmate's status or the legitimate penological objectives of corrections officials*.  O'Lone v. Estate of Shabazz*, 482 U.S. 342, 107 S.Ct. 2400 (1987); *see Salahuddin v. Coughlin*, 993 F.2d 306, 308 (2d Cir. 1993)("it is well established that prisoners have a constitutional right to participate in congregate religious

services.")(citing cases).

Not withstanding this bedrock principle, not every religious deprivation arises to a level of constitutional significance.  To succeed in establishing a constitutional deprivation, plaintiff must show that defendants' conduct substantially burdened his sincerely held religious beliefs.[7]  *Salahuddin v. Goord,* 467 F.3d 263, 274-75 (2d Cir. 2006); *King v. Bennett,* No. 02 Civ 349Sr, 2007 WL 1017102, at *4 (W.D.N.Y. Mar. 30, 2007).  In this instance plaintiff's claim that he was not provided a religious call out on one occasion, and not served a meal consistent with his NOI beliefs on another, represents the type of *de minimis* deprivation which falls well below the threshold level sufficient to establish the existence of a substantial burden on his First Amendment right to worship.  Accordingly, I recommend dismissal of plaintiff's religious exercise claims, to the extent

---

[7]      Noting in its decision in *Ford v. McGinnis* a circuit split over whether prisoners must demonstrate that a burden on their religious exercise is substantial in order to establish a free exercise claim, the Second Circuit declined to resolve the issue, instead assuming continued applicability of the substantial burden test.  352 F.3d 582, 592-93 (2d Cir. 2003).  Recent cases from this and other courts suggest that the Second Circuit resolved this split in its decision in *Salahuddin v. Goord*, 467 F.3d 263 (2d Cir. 2006) by subscribing to the substantial burden test.  *See, e.g., Livingston v. Griffin,* No. 9:04-CV-00607, 2007 WL 1500382, at *15 (N.D.N.Y. May 21, 2007) (Singleton, J.); *King v. Bennett,* No. 02-CV-349, 2007 WL 1017102, at *4 (W.D.N.Y. Mar. 30, 2007).  While harboring some doubt that the Second Circuit has in fact laid the matter to rest, I find it unnecessary to take a stance regarding this issue.

that they may be predicated on the First Amendment.[8]  *Gubitosi v. Kapica*,
154 F.3d 30, 31 n.1 (2d Cir. 1998)(per curiam); *McKnight v. Dormitory
Auth. of State of N.Y.*, 189 F.R.D. 225, 227 (N.D.N.Y. 1999)(McAvoy,
C.J.).

4.    Excessive Force

Plaintiff's complaint alleges the use of excessive force against him
by defendant John Doe on October 16, 2006, and by defendant John
Allen on November 15, 2006.  Amended Complaint (Dkt. No. 20) ¶¶ 25-
26.  Defendants seek dismissal of these claims based upon plaintiff's
failure to allege facts sufficient to support this portion of his Eighth

---

[8]      It appears that plaintiff's religious deprivation claim, while bearing the
label of "discrimination", may represent an attempt on his part to interpose an equal
protection cause of action.  The Equal Protection Clause of the Fourteenth
Amendment directs state actors to treat similarly situated people alike.  *See City of
Cleburne, Texas v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 3254
(1985).  To prove a violation of the Equal Protection Clause, a plaintiff must
demonstrate that he or she was treated differently than others similarly situated as a
result of intentional or purposeful discrimination directed at an identifiable or suspect
class.  *See Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citing, *inter alia*,
*McCleskey v. Kemp*, 481 U.S. 279, 292, 107 S. Ct. 1756, 1767 (1987)).  The plaintiff
must also show that the disparity in treatment "cannot survive the appropriate level of
scrutiny which, in the prison setting, means that he must demonstrate that his
treatment was not reasonably related to [any] legitimate penological interests."  *Phillips
v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005) (quoting *Shaw v. Murphy*, 532 U.S. 223,
225, 121 S. Ct. 1475 (2001) (internal quotation marks omitted)).  Since defendants
have not sought dismissal of any equal protection claim which may be advanced in
plaintiff's complaint, I have not addressed it in this report.

Amendment cause of action.  Dkt. No. 57 at p. 13.

It bears repeating that the court's charge at this juncture is solely to determine whether plaintiff has sufficiently pleaded a claim of excessive force sufficient to support an Eighth Amendment violation and should thus be permitted to offer facts in support of that claim.  In this instance plaintiff's complaint surpasses this modest hurdle, since it identifies the party alleged to have exerted excessive force, as well as the date upon which it was applied.  To the extent that further development of the facts is required, that is a matter which is more appropriately left for pretrial discovery and for development either at trial or on a motion  for summary judgment.  *Iqbal*, 490 F.3d at 178.  I therefore recommend that the portion of defendants' motion seeking dismissal of plaintiff's excessive force cause of action be granted.

### 5.   Medical Indifference

Plaintiff's complaint also makes reference to his discontent with medical treatment received from prison medical staff, including of his skin disorder, and the failure of defendant Dr. T. Whalen to order special soap for his skin condition, as well as an alleged delay to provide him with his medications upon his transfer into the special housing unit ("SHU").

Amended Complaint (Dkt. No. 20) ¶¶ 16, 24.  In their motion, defendants also challenge the sufficiency of plaintiff's medical indifference allegations. Dkt. No. 57 at pp. 13-15.

The Eighth Amendment's prohibition of cruel and unusual punishment encompasses punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle,* 429 U.S. at 103, 104, 97 S. Ct. at 290, 291 (quotations and citations omitted); *see also Whitley v. Albers,* 475 U.S. 312, 319, 106 S. Ct. 1076, 1084 (1986) (citing, *inter alia*, *Estelle,* 429 U.S. at 103, 97 S. Ct. at 290).  While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement; accordingly, the conditions of an inmate's confinement are subject to Eighth Amendment scrutiny.  *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S. Ct. 1970, 1976 (1994) (citing, *inter alia*, *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S. Ct. 2392, 2400 (1981)).  A claim alleging that prison conditions violate the Eighth Amendment must satisfy both an objective and subjective requirement; the conditions must be "sufficiently serious" from an objective point of view, and the plaintiff must demonstrate

that prison officials acted subjectively with "deliberate indifference."

*See Leach v. Dufrain,* 103 F. Supp. 2d 542, 546 (N.D.N.Y. 2000) (Kahn,

J.) (citing *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 2324

(1991)); *Waldo v. Goord,* No. 97-CV-1385, 1998 WL 713809, at *2

(N.D.N.Y. Oct. 1, 1998) (Kahn, J. and Homer, M.J.) (citations omitted).

In order to state a medical indifference claim under the Eighth

Amendment, a plaintiff must allege a deprivation involving a medical need

which is, in objective terms, "'sufficiently serious'".  *Hathaway v. Coughlin*,

37 F.3d 63, 66 (2d Cir. 1994) (quoting *Wilson*, 501 U.S. at 298, 111 S. Ct.

at 2324), *cert. denied sub nom.*, *Foote v. Hathaway*, 513 U.S. 1154, 115

S. Ct. 1108 (1995).  A medical need is serious for constitutional purposes

if it presents "'a condition of urgency' that may result in 'degeneration' or

'extreme pain'."  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)

(citations omitted).  A serious medical need can also exist where "'failure

to treat a prisoner's condition could result in further significant injury or the

unnecessary and wanton infliction of pain'"; since medical conditions vary

in severity, a decision to leave a condition untreated may or may not be

unconstitutional, depending on the facts*.  Harrison v. Barkley*, 219 F.3d

132, 136-37 (2d Cir. 2000) (quoting, *inter alia*, *Chance*, 143 F.3d at 702).

Relevant factors informing this determination include whether the plaintiff suffers from an injury that a "'reasonable doctor or patient would find important and worthy of comment or treatment'", a condition that "'significantly affects'" a prisoner's daily activities, or "'the existence of chronic and substantial pain.'"  *Chance*, 143 F.3d at 701 (citation omitted); *LaFave v. Clinton County*, No. CIV. 9:00CV774, 2002 WL 31309244, at *3 (N.D.N.Y. Apr. 3, 2002) (Sharpe, M.J.) (citation omitted).

In large part plaintiff's complaint, even when generously construed, fails to allege that he suffers from any constitutionally cognizable serious medical need.  Addressing his Eighth Amendment claim, plaintiff alleges the existence of the skin disorder diagnosed by a dermatologist, who has recommended the use of Dove or Aveeno soap for bathing.  Amended Complaint (Dkt. No. 20) ¶ 24.  This allegation falls far short of establishing the existence of a serious medical need.  *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998).

The other alleged grounds for plaintiff's potential medical indifference claim surrounds a delay in providing him with medications upon his transfer into the SHU.  Amended Complaint (Dkt. No. 20) ¶ 16. While that portion of the complaint does not clearly identify the medical

conditions associated with those medications, plaintiff does allege that he suffers from diabetes, and that it is an important part of his plan for managing that condition to increase insulin sensitivity and lower insulin resistance.  *Id.* at ¶ 27.

While plaintiff has identified diabetes as one of his medical conditions of concern, that allegation alone is not particularly informative or helpful in determining whether Eighth Amendment concerns are implicated.  The relevant inquiry remains "whether the failure to treat the disease is sufficiently serious."  *Melendez v. Wright*, 9:05 Civ 1614, 2008 WL 4757360 at *4 (N.D.N.Y. October 29 2008) (Mordue, J. and Treece, M.J.).  It is the "particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition considered in the abstract, that is relevant for Eight Amendment purposes.*"  Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003).

At this juncture it cannot be said that plaintiff has alleged the existence of a serious medical need sufficient to support a finding that he has stated a plausible Eighth Amendment medical indifference claim.  I therefore recommend dismissal of plaintiff's medical indifference claim,

with leave to replead.

F.    Intra-Agency Conspiracy Doctrine

One of plaintiff's causes of action is labeled as "conspiracy",

consisting of claims related to a number of specific occurrences including

the issuance of a misbehavior reports, the offering of false testimony at

disciplinary proceedings, and the investigation and disposition of various

grievances filed by the plaintiff.  Amended Complaint (Dkt. No. 20) ¶¶ 34-

51.  Defendants urge dismissal of this cause of action based upon the

intra-agency conspiracy doctrine.  Dkt. No. 57 at pp. 21-23.

In a doctrine rooted in the conspiracy provision of section one of the

Sherman Antitrust Act, 15 U.S.C. § 1, and which, although developed in

the context of business entities, since inception has been expanded to

apply to business corporations and public entities as well, the intra-

corporate conspiracy doctrine provides that, with exceptions not now

presented, an entity cannot conspire with one or more of its employees,

acting within the scope of employment, and thus a conspiracy claim

conceptually will not lie in such circumstances.  *See, e.g., Everson v. New

York City Transit Auth.*, 216 F. Supp. 2d 71, 75-76 (E.D.N.Y. 2002);

*Griffin-Nolan v. Providence Wash. Ins. Co.*, No. 504CV1453, 2005 WL

1460424, at *10-11 (N.D.N.Y. June 20, 2005) (Scullin, C.J.).

In this instance, plaintiff's conspiracy claims allege participation on the part of various employees of the DOCS.  Under these circumstances Green is precluded from pursuing his conspiracy claims set forth in his complaint.  *Welch v. Fisher*, 9:07-CV-0989, 2007 WL 3231992, *2 (N.D.N.Y. Oct. 30, 2007)(McAvoy, S.J.). Accordingly, I recommend dismissal of plaintiff's conspiracy cause of action.

      G.    <u>Injunctive Relief</u>

Defendants next challenge plaintiff's request for injunctive relief on a variety of grounds, asserting that 1) the prerequisites for injunctive relief under Rule 65 of the Federal Rules of Civil Procedure and the governing legal standard cannot be met; 2) the Eleventh Amendment bars suits in equity against the state; and 3) plaintiff has failed to demonstrate the existence of a policy or custom resulting in any constitutional deprivation. Dkt. No. 57 at pp. 16-21.

To the extent that defendants' motion attacks the sufficiency of plaintiff's proof available to establish grounds for a preliminary injunction, I recommend that the argument not be considered in light of the fact that plaintiff does not presently seek preliminary injunctive relief.  Dkt. No. 60

at p. 8.  Turning to defendants' alternative arguments, I note that while it is

true that injunctive relief against the state would be precluded, *see*

*Gowins*, 2002 WL 1770772, at *3-4, in the event of a finding of an ongoing

constitutional deprivation it would not necessarily be improper for the court

to enjoin one or more DOCS employees, acting in their official capacities,

from continuing the policy which caused or led to the deprivation.  *Koehl v.*

*Dalsheim*, 85 F.3d 86, 88-89 (2d Cir. 1996).  Under these circumstances I

recommend that the court not act on defendants' injunctive relief

arguments, but instead deny that portion of their motion at this procedural

juncture, without prejudice.

      H.    Qualified Immunity

     In addition to seeking dismissal of certain of plaintiff's claims on the

merits, defendants urge their entitlement to qualified immunity.  Dkt. No.

57 at pp. 15-16.  The portion of their memorandum addressing this issue,

however, does not indicate whether the defense is offered in connection

with certain specific causes of action, or instead extends to all of plaintiff's

claims.

     Qualified immunity shields government officials performing

discretionary functions from liability for damages "insofar as their conduct

does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982) (citations omitted). Accordingly, governmental officials sued for damages "are entitled to qualified immunity if 1) their actions did not violate clearly established law, or 2) it was objectively reasonable for them to believe that their actions did not violate such law."  *Warren v. Keane*, 196 F.3d 330, 332 (2d Cir. 1999) (citing *Salim v. Proulx*, 93 F.3d 86, 89 (2d Cir. 1996));  *see also Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007);  *Iqbal*, 490 F.3d at 152. The law of qualified immunity seeks to strike a balance between overexposure by government officials to suits for violations based upon abstract rights and an unduly narrow view which would insulate them from liability in connection with virtually all discretionary decisions.  *Locurto v. Safir*, 264 F.3d 154, 162-63 (2d Cir. 2001);  *Warren*, 196 F.3d at 332.  As the Second Circuit has observed,

> [q]ualified immunity serves important interests in our political system, chief among them to ensure that damages suits do not unduly inhibit officials in the discharge of their duties by saddling individual officers with personal monetary liability and harassing litigation.

*Provost v. City of Newburgh*, 262 F.3d 146, 160 (2d Cir. 2001) (internal

quotations omitted) (citing, *inter alia*, *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 456 F.2d 1339, 1348 (2d Cir. 1972)).

Until recently, it was generally agreed that a proper qualified immunity analysis entailed a three step inquiry.  *Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 211-12 (2d Cir. 2003).  As a threshold matter a court considering the issue was charged with first determining whether, based upon the facts alleged, the plaintiff had facially established a constitutional violation.  *Id.* at 211; *Gilles v. Repicky*, 511 F.3d 239, 244 (2d Cir. 2007).  If the answer to this inquiry was in the affirmative, then the focus turned to whether the right in issue was clearly established at the time of the alleged violation. *Harhay*, 323 F.3d at 211 (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001)); *see also Poe v. Leonard*, 282 F.3d 123, 132 (2d Cir. 2002).  Finally, upon determining that the plaintiff had a clearly established, constitutionally protected right that was violated, the court next considered whether it was nonetheless objectively reasonable for the defendant to believe that his or her action did not abridge that established right.  *Harhay*, 323 F.3d at 211; *Poe*, 282 F.3d at 133 (quoting *Tierney v. Davidson*, 133 F.3d 189, 196 (2d

41

Cir. 1998) (quoting, in turn, *Salim*, 93 F.3d at 89)).

The United States Supreme Court recently had the opportunity to reconsider the analysis prescribed by *Saucier*, holding that while the sequence of the inquiry set forth in that case is often appropriate, it should no longer be regarded as compulsory.  *Pearson v. Callahan*, 555 U.S. ___, 129 S. Ct. 808, 818 (2009).  In *Pearson*, the Court reasoned that while the *Saucier* protocol promotes the development of constitutional precedent and is "especially valuable with respect to questions that do not frequently arise in cases in which a qualified immunity defense is unavailable," the rigidity of the rule comes with a price.  *Id.*  The inquiry often wastes both scarce judicial and party resources on challenging questions that have no bearing on the outcome of the case.  *Id.*  Given that the purpose of the qualified immunity doctrine is to ensure that insubstantial claims are resolved prior to discovery, the Court opined that the algorithm prescribed by *Saucier* may serve to defeat this goal by requiring the parties "to endure additional burdens of suit – such as the cost of litigating constitutional questions and delays attributable to resolving them – when the suit otherwise could be disposed of more readily."  *Id*. (quotations and citations omitted).

As a result of its reflection on the matter, the *Pearson* Court concluded that because the "judges of the district courts and courts of appeals are in the best position to determine the order of decisionmaking [that] will best facilitate the fair and efficient disposition of each case", those decision makers "should be permitted to exercise their sound discretion in deciding which of the . . . prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Id.* at 821, 818.

Each of the constitutional principles at the core of plaintiff's claims were clearly established at the relevant times. Under the circumstances, and given the early procedural stage and the lack of meaningful development of the facts, I am unable to recommend a finding that the defendants are entitled to qualified immunity from suit.

IV.   SUMMARY AND RECOMMENDATION

Plaintiff's complaint represents a broad based and far reaching indictment growing out of his experiences while an inmate at Great Meadow, ranging from the use by certain defendants of excessive force to the amendment of a prison policy related to the acquisition by inmates of televisions for personal use. Plaintiff's claims are grouped into categories,

asserting claims sounding in retaliation, discrimination, violation of his rights under the Eighth Amendment, conspiracy and breach of contract. Defendants have sought dismissal of plaintiff's claims on a variety of bases.

Having carefully considered the defendants' motion in view of the formative stage of the proceedings at which it is made, I find that defendants are entitled to dismissal of certain of plaintiff's claims, but otherwise recommend denial of defendants' motion without prejudice to their right, with the benefit of a more fully developed record, to present these arguments once again on motion for summary judgment. Accordingly, it is hereby respectfully

RECOMMENDED that defendants' motion be GRANTED, in part, and that his claim for violation of section 1983 premised upon breach of contract as well as any pendent state law claim for breach of contract be DISMISSED, and further that plaintiff's causes of action for deliberate medical indifference, conspiracy, his claim against defendant B. Winchell alleging that Winchell gave false testimony at a disciplinary hearing, plaintiff's First Amendment free religious exercise cause of action, all claims against defendants McLaughlin and Greene, and all claims for

44

damages against the remaining defendants in their official capacities, be

DISMISSED, with leave to replead only with respect to plaintiff's deliberate

medical indifference claim, but that defendants' motion otherwise be

DENIED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge

written objections to the foregoing report.  Such objections shall be filed

with the Clerk of the Court within TEN days of service of this report.

FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE

APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d),

72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this

Report and Recommendation upon the parties in accordance with this

court's local rules.

_____

David E. Peebles
U.S. Magistrate Judge


Dated:      March 30, 2009
            Syracuse, NY

45