IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

SHAWN GREEN,

                    Plaintiff,

        v.                                          Civil Action No.
                                                    9:07-CV-0351 (GTS/DEP)

G. BLOOD,

                    Defendant.

_____

APPEARANCES:                                OF COUNSEL:

FOR PLAINTIFF:

SHAWN GREEN, *Pro Se*
97-A-0801
Auburn Correctional Facility
P.O. Box 618
Auburn, NY 13021

FOR DEFENDANT:

HON. ERIC T. SCHNEIDERMAN          ROGER W. KINSEY, ESQ.
Attorney General of the            Assistant Attorney General
State of New York
The Capitol
Albany, NY 12224-0341

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

*Pro se* plaintiff Shawn Green, a New York State prison inmate, has commenced this action pursuant to 42 U.S.C. § 1983, alleging deprivation of his civil rights. Although plaintiff's third amended complaint names, as defendants, several employees of the New York State Department of Corrections and Community Supervision ("DOCCS") and asserts several causes of action against them, subsequent motion practice has narrowed the action in scope to one claim against a single defendant. Specifically, it is alleged that the last remaining defendant, Charles Blood,[1] a corrections officer employed by the DOCCS, denied plaintiff his constitutional right to recreation while he was relegated to keeplock confinement.

Defendant Blood now seeks the entry of summary judgment dismissing the remaining claim against him, arguing that the record does not support either a finding of his personal involvement or the existence of a cognizable Eighth Amendment claim against him, and additionally asserting his entitlement to qualified immunity. For the reasons set forth below, I recommend that defendant's motion be granted.

---

[1] Defendant Blood was sued by plaintiff as "G. Blood," Third Am. Compl. (Dkt. No. 93) at 1, and is listed on the court's records as "G. Blood." The clerk is respectfully directed to amend the court's records to reflect that this defendant's correct name is "Charles Blood."

I.    BACKGROUND[2]

Plaintiff is a prison inmate currently being held in the custody of the DOCCS.  *See generally* Third Am. Compl. (Dkt. No. 93).  Although he is now confined elsewhere, at all times relevant to this action, plaintiff was incarcerated at the Great Meadow Correctional Facility ("Great Meadow"), located in Comstock, New York.  *Id.*

On or about October 16, 2006, plaintiff began serving a thirty-day period of keeplock confinement for disciplinary reasons.[3]  Third Am. Compl. (Dkt. No. 93) at ¶ 25.  While in keeplock, plaintiff filed five grievances alleging that he had been deprived recreation.  Hoy Decl. (Dkt. No. 161, Attach. 4) at ¶ 5; Hoy Decl. Exhs. (Dkt. No. 161, Attach 5.) at 2. In two of those five grievances, plaintiff alleged that defendant Blood

_____

    [2]    In light of the procedural posture of this case, the court is "required to resolve all ambiguities and draw all permissible factual inferences" in favor of plaintiff. *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

    [3]    "Keeplock" is a form of confinement through which an "inmate is confined to his cell, deprived of participation in normal prison routine, and denied contact with other inmates." *Gittens v. LeFevre*, 891 F.2d 38, 39 (2d Cir. 1989), *accord*, *Warburton v. Goord*, 14 F. Supp. 2d 289, 293 (W.D.N.Y. 1998); *Tinsley v. Greene,* No. 95-CV-1765, 1997 WL 160124, at *2 n.2 (N.D.N.Y. Mar. 31, 1997) (Pooler, J., adopting report and recommendation by Homer, M.J.) (citing *Green v. Bauvi*, 46 F.3d 189, 192 (2d Cir. 1995)).  "The most significant difference between keeplock and general population inmates is that the former do not leave their cells for out-of-cell programs unless they are a part of mandatory educational programs and general population inmates spend more time out of their cells on weekends."  *Lee v. Coughlin*, 26 F. Supp. 2d 615, 628 (S.D.N.Y. 1998).

denied him recreation on November 7, 2006. Hoy Decl. Exhs. (Dkt. No. 161, Attach. 5) at 4-5. Those two grievances were assigned the numbers 41,835-06 and 41,659-06, and are identical in substance, except that grievance number 41,659-06 appears to have originally identified an "Officer Gordon" as the responsible party, although Officer Gordon's name was replaced with "G. Blood."[4] *Id.* According to Sergeant Hoy, a corrections sergeant at Great Meadow, he investigated grievance number 41,835-06 by obtaining a written statement from defendant Blood in which he denied plaintiff's allegations, and interviewing plaintiff.[5] Hoy Decl. (Dkt.

_____

[4] In his motion, defendant Blood asserts that plaintiff filed only one grievance, grievance number 41,835-06, against him alleging that he denied plaintiff of recreation. Blood Decl. (Dkt. No. 161, Attach. 3) at ¶ 10; Hoy Decl. (Dkt. No. 161, Attach. 4) at ¶¶ 18-19; Def.'s L.R. 7.1 Statement (Dkt. No. 161, Attach. 1) at ¶¶ 12, 13, 15. In addition, Sergeant Hoy avers that grievance number 41,659-06 did not involve defendant Blood but instead involved "plaintiff . . .disput[ing] the regulation for appropriate wear at recreation." Hoy Decl. (Dkt. No. 161, Attach. 4) at ¶ 19. However, a careful review of the grievances attached to Sergeant Hoy's declaration confirms that plaintiff filed two grievances against defendant Blood for denying him recreation on November 7, 2006, grievance numbers 41,835-06 and 41,659-06. Hoy Decl. (Dkt. No. 161, Attach. 5) at 4-5.

[5] Attached to Sergeant Hoy's declaration is a memorandum from defendant Blood to Sergeant Hoy in which defendant Blood states that plaintiff's "accusations against [him] are fabricated[.]" Hoy Decl. Exhs. (Dkt. No. 161, Attach. 5) at 6. This memorandum however, does not reference a grievance number, so it is unclear to the court whether it is a response to grievance number 41,835-06 or 41,659-06. Because Sergeant Hoy's declaration seems to suggest that it relates to grievance number 41,835-06, and plaintiff has not disputed this, the court will assume that this memorandum does, in fact, relate to grievance number 41,835-06 rather than grievance number 41,659-06. Similarly, attached to Sergeant Hoy's declaration is a memorandum from him to "D.S.S. VanGuilder" that does not identify the grievance number to which it relates. Hoy Decl. (Dkt. No. 161, Attach. 5) at 7. Again, because

No. 161, Attach. 4) at ¶¶ 9-10; Hoy Decl. Exhs. (Dkt. No. 161, Attach. 5) at 6-7.  Grievance number 41,659-06 was also investigated by interviewing plaintiff and "staff," and the Superintendent at Great Meadow's report indicates that this investigation did not reveal any evidence to substantiate plaintiff's allegations.  Hoy Decl. Exhs. (Dkt. No. 161, Attach. 5) at 20.

During Sergeant Hoy's investigation of grievance number 41,835-06, he discovered that the reason plaintiff missed recreation on November 7, 2006, was because he was not in his cell when prison staff compiled the recreation list.[6]  Hoy Decl. (Dkt. No. 161, Attach. 4) at ¶ 9; Hoy Decl. Exhs. (Dkt. No. 161, Attach. 5) at 7.  Instead, Sergeant Hoy states that plaintiff was at the Great Meadow hospital on that morning to receive his insulin shot.  *Id.*  Plaintiff denies this fact, arguing that the "B-book log book . . . demonstrate[s] otherwise."  Plf.'s Decl. (Dkt. No. 167) at ¶ 9; Plf.'s Resp. L.R. 7.1 Statement (Dkt. No. 167) at ¶ 5.

---

Sergeant Hoy's declaration seems to suggest that it relates to grievance number 41,835-06, and plaintiff does not dispute this, the court will assume that it relates to that particular grievance, rather than grievance number 41,659-06.

[6]    Although defendant Blood's motion does not explicitly explain how a recreation list is prepared, it appears that prison staff ask inmates in keeplock confinement whether they wish to participate in recreation during breakfast.  Hoy Decl. (Dkt. No. 161, Attach. 4) at ¶ 9; Hoy Decl. Exhs. (Dkt. No. 161, Attach. 5) at 7; Blood Decl. (Dkt. No. 161, Attach. 3) at ¶ 7; Def.'s L.R. 7.1 Statement (Dkt. No. 161, Attach. 1) at ¶ 5.

Two of plaintiff's other grievances, grievance numbers 41,318-06 and 41,532-06, that relate to recreation do not involve defendant Blood but instead relate to plaintiff's complaints regarding clothing. Hoy Decl. Exhs. (Dkt. No. 161, Attach. 5) at 9, 11, 13. As for the remaining grievance, presumably grievance number 41,500-06, there is no record evidence to support Sergeant Hoy's statement that it does not involve defendant Blood. Hoy Decl. (Dkt. No. 161, Attach. 4) at ¶¶ 16-17.[7] In any event, for purposes of this motion, because the record evidence reveals that defendant Blood was certainly implicated in two grievances, grievance numbers 41,835-06 and 41,569-06, and because plaintiff does not allege that he filed any additional grievances against defendant Blood, the court will address only grievance numbers 41,835-06 and 41,569-06 in this report.

In support of his motion, defendant Blood has submitted a declaration in which he avers that he played no role in plaintiff missing

---

[7]     Indeed, the exhibit to which Sergeant Hoy and defendant Blood's L.R. 7.1 Statement cites for this proposition is a copy of grievance number 41,532-06 and related documents. Hoy Decl. (Dkt. No. 161, Attach. 5) at 13-18. Although plaintiff does not dispute that grievance number 41,500-06 is unrelated to defendant Blood, because this fact is unsupported by record evidence, the court does not presume its truth. *See* N.D.N.Y. L.R. 7.1(a)(3) ("The Court shall deem admitted any *properly supported* facts set forth in [a moving party's] Statement of Material Facts that the opposing party does not specifically controvert." (emphasis added)).

recreation other than on November 7, 2006, and he "categorically den[ies]" ever instructing another officer to deny plaintiff's request for keeplock recreation. Blood Decl. (Dkt. No. 161, Attach. 3) at ¶¶ 12, 13. In his opposition papers, plaintiff disputes this by averring that he overheard defendant Blood instructing another officer to deprive him of keeplock exercise. Plf.'s Decl. (Dkt. No. 167) at ¶ 10.

II.    PROCEDURAL HISTORY

Plaintiff commenced this action on April 2, 2007. Complaint (Dkt. No. 1). Over three years later, plaintiff filed a third amended complaint, the operative pleading at this juncture, that was accepted for filing by decision and order issued by District Judge Glenn T. Suddaby on July 22, 2010. Dkt. Nos. 93, 104. In his decision and order accepting the third amended complaint for filing, Judge Suddaby also dismissed certain claims and defendants implicated by that pleading. *See generally* Dkt. No. 104.

On July 29, 2011, the remaining defendants named in plaintiff's third amended complaint moved for summary judgment. Dkt. No. 145. By report issued on February 24, 2007, and adopted by Judge Suddaby on March 20, 2012, I recommended that all claims in the action be dismissed,

7

with the exception of plaintiff's cause of action against defendant Blood relating to the alleged deprivation of recreation during his keeplock confinement, without prejudice to defendant Blood's right to file a second motion for summary judgment. Dkt. Nos. 152, 156.

On April 24, 2012, defendant Blood filed a motion for summary judgment seeking dismissal of plaintiff's remaining claim against him arguing that (1) defendant Blood was not personally involved in any of the grievances related to recreation except for on November 7, 2006, (2) plaintiff's third amended complaint fails to state a claim under the Eighth Amendment, and (3) he is entitled to qualified immunity. *See generally* Dkt. No. 161. Plaintiff has since responded in opposition to defendant Blood's motion, Dkt. No. 167, which is now fully briefed and ripe for determination, and has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See also* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

A.   Summary Judgment Standard

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure.  Under that provision, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004).  A fact is "material" for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).  A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion.  *Anderson*, 477

9

U.S. at 250 n.4; *Sec. Ins. Co.*, 391 F.3d at 83.  In the event this initial

burden is met, the opposing party must show, through affidavits or

otherwise, that there is a material dispute of fact for trial.  Fed. R. Civ. P.

56(e); *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

When deciding a summary judgment motion, a court must resolve

any ambiguities and draw all inferences in a light most favorable to the

nonmoving party.  *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d

133, 137-38 (2d Cir. 1998).  The entry of summary judgment is justified

only in the event of a finding that no reasonable trier of fact could rule in

favor of the non-moving party.  *Bldg. Trades Employers' Educ. Ass'n v.*

*McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002); *see also Anderson,* 477

U.S. at 250 (finding summary judgment appropriate only when "there can

be but one reasonable conclusion as to the verdict").

B.    Personal Involvement

In his motion, defendant Blood first argues that plaintiff's third

amended complaint does not give rise to his personal involvement in any

of the alleged constitutional violations.  Def.'s Memo. of Law (Dkt. No.

161, Attach. 2) at 7.  "Personal involvement of defendants in alleged

constitutional deprivations is a prerequisite to an award of damages under

[section] 1983." *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991); *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir. 1977)). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

Here, the undisputed evidence, including defendant Blood's declaration, demonstrates that plaintiff has alleged that defendant Blood deprived him of recreation on November 7, 2006. Blood Decl. (Dkt. No. 161, Attach. 3) at ¶ 12; Hoy Decl. (Dkt. No. 161, Attach. 4) at ¶ 7, 9; Hoy Decl. Exhs. (Dkt. No. 161, Attach. 5) at 4-5. Because this is not disputed, and because defendant Blood appears to acknowledge his personal involvement on that date, I recommend a finding that defendant Blood was personally involved only in plaintiff's alleged denial of recreation on November 7, 2006. *See* Blood Decl. (Dkt. No. 161, Attach. 3) at ¶ 12 ("Other than the November 7, 2006 incident, I did not play any part in plaintiff's missing a recreational period.").

## C.  Merits of Plaintiff's Eighth Amendment Claim

To the extent that the sole remaining claim in plaintiff's third amended complaint arises from an alleged deprivation of exercise, rather than recreation, that claim implicates the Eighth Amendment's prohibition against cruel and unusual punishment.  *See Williams v. Greifinger*, 97 F.3d 699, 704 (2d Cir. 1996) (recognizing an inmate's right to exercise under the Eighth Amendment); *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985) (expressly finding that inmates have a constitutional right to exercise, but that "the minimal civilized measure of life's necessities" are not necessarily curtailed "merely because during some period they cannot hear the television").  The Eighth Amendment prohibits punishment that is "incompatible with 'the evolving standards of decency that mark the progress of a maturing society[,]' or which 'involve the unnecessary and wanton infliction of pain[.]'" *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976) (quoting *Trop v. Dulles*, 356 U.S. 86, 100-01 (1958); *Gregg v. Georgia*, 428 U.S. 153, 169-73 (1976) (internal citations omitted)).  While the Eighth Amendment "'does not mandate comfortable prisons,' neither does it permit inhumane ones."  *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 349 (1981)).

A claim alleging that prison conditions have violated the Eighth Amendment must satisfy both an objective and subjective requirement. *Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996). As to the objective requirement, "the plaintiff must demonstrate that the conditions of his confinement result in 'unquestioned and serious deprivations of basic human needs.'" *Jolly*, 76 F.3d at 480 (quoting *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 2985)); *see also Davidson v. Coughlin*, 920 F. Supp. 305, 308 (N.D.N.Y. 1996) (McAvoy, J.). As to the subjective requirement, "the plaintiff must demonstrate that the defendants imposed those conditions with 'deliberate indifference.'" *Jolly*, 76 F.3d at 480 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)); *see also Waldo v. Goord,* No. 97-CV-1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J., *adopting report and recommendation by* Homer, M.J.). Deliberate indifference exists if an official "knows of and disregards an excessive risk to inmate health or safety; [he] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Waldo*, 1998 WL 713809, at *2; *Davidson*, 920 F. Supp. at 308.

With respect to the objective element, it is well-established the

Eighth Amendment protects an inmate's right to exercise. *Williams v. Goord*, 142 F. Supp. 2d 416, 425 (S.D.N.Y. 2001) (citing *Williams*, 97 F.3d at 704). As one court in this circuit has explained,

> a court faced with the task of determining whether a particular exercise deprivation falls below the objective requirements of the Eighth Amendment should consider all of the relevant facts, including (1) the duration of the deprivation; (2) the extent of the deprivation – whether the deprivation was partial or complete; (3) the availability of other out-of-cell activities; (4) the opportunity for in-cell exercise; and (5) the justification for the deprivation.

*Davidson v. Coughlin*, 968 F. Supp. 121, 130 (S.D.N.Y. 1997) (internal citations omitted). "Although a prisoner may satisfy the objective component of the Eighth Amendment test by showing that he was denied meaningful exercise for a substantial period of time, temporary denials of exercise maybe constitutional." *Davidson*, 968 F. Supp. at 129 (internal citations omitted).

Here, discussing first the duration of plaintiff's deprivation, although in his third amended complaint plaintiff intimates that he was denied recreation for thirty days, Third Am. Compl. (Dkt. No. 93) at ¶ 25, the overwhelming record evidence does not support this allegation.[8]

---

[8] The court has construed plaintiff's third amended complaint with the utmost liberality in finding that it alleges that defendant Blood deprived plaintiff

14

Grievances numbered 41,835-06 and 41,569-06, the two that implicate defendant Blood, for example, complain only that plaintiff was deprived of recreation only on November 7, 2006.  Hoy Decl. Exhs. (Dkt. No. 161, Attach. 5) at 4-5; Blood Decl. (Dkt. No. 161, Attach. 3) at ¶ 12.  In addition, the record indicates that plaintiff began serving his thirty-day keeplock confinement period on or about October 16, 2006.  Third Am. Compl. (Dkt. No. 93) at ¶ 25.  Thus, even if defendant Blood denied him recreation beginning on November 7, 2006, through the end of his keeplock confinement, plaintiff would only have been denied recreation for approximately one week.  Finally, in his response to defendant Blood's pending motion, plaintiff only challenges defendant Blood's rationale for plaintiff missing recreation on November 7, 2006.  *See* Plf.'s Decl. (Dkt. No. 167) at ¶ 9 (disputing that he was at the Great Meadow hospital on

---

recreation for thirty days.  Specifically, the allegation relating to defendant Blood states as follows:

> Blood deprive [sic] plaintiff of keeplock recreation during October 16, 2006 misbehavior report thirty (30) days confinement to cell extremely limited in space as well as poorly ventilated, which infringed upon plaintiff's minimal life necessities with 24 hours continuous detainment that drastically effected [sic] his diabetes management plan geared up to increase insulin sensitivity and lower insulin resistance in addition to oral medication. Grievance #41,608-06.

Third Am. Compl. (Dkt. No. 93) at ¶ 25.

the morning of November 7, 2006).  Accordingly, based on the record evidence, I find that no reasonable factfinder could conclude that defendant Blood denied plaintiff recreation for any longer than one week, a period that is constitutionally insignificant.  *See Green v. Ferrell*, 801 F.2d 765, 771-71 (5th Cir. 1986) (finding that denying the plaintiff out-of-cell exercise for fifteen days while in disciplinary confinement did not violate the Eighth Amendment); *Gibson v. City of New* York, No. 96-CV-3409, 1998 WL 146688, at *3 (S.D.N.Y. Mar. 25, 1998) ("[T]he deprivation of the opportunity to participate in recreation for eight days in a sixty day period, even when coupled with the deprivation of an opportunity to exercise on two consecutive days, is not sufficiently serious to constitute [a constitutional violation]."); *Young v. Scully*, Nos. 91-CV-4332, 91-CV-4801, 91-CV-6769, 1993 WL 88144, at *5 (S.D.N.Y. Mar. 22, 1993) (holding that depriving the plaintiff of exercise for "several days" did not support an Eighth Amendment claim); *Arce v. Walker*, 907 F. Supp. 658, 662-63 (W.D.N.Y. 1995) (holding that the plaintiff's Eighth Amendment rights were not violated where he was deprived of out-of-cell exercise for eighteen of nineteen days).

As it relates to the "justification for deprivation" factor listed in

*Davidson*, defendant Blood argues that plaintiff was not provided recreation on November 7, 2006, because he was at the hospital receiving his morning insulin shot.  Blood Decl. (Dkt. No. 161, Attach. 3) at ¶ 7. Plaintiff disputes this fact by stating that the "B-block log book entries [have] Plaintiff . . . inside his cell at times of breakfast run."  Plf.'s Decl. (Dkt. No. 167) at ¶ 9.  As support for this statement, plaintiff directs the court to Docket No. 120, Attach. 7.  *Id.*  A careful review of the documents contained in that docket entry, which are copies of defendant Blood's document production served on plaintiff, does not reveal any evidence that plaintiff was inside his cell on the morning of November 7, 2006.  *See generally* Dkt. No. 120, Attach. 7.  To the extent that plaintiff had hoped to direct the court to a "log book" that would demonstrate that plaintiff was inside his cell on the morning of November 7, 2006, it was incumbent upon him, in properly opposing defendant Blood's motion, to submit such evidence in his response, rather than simply incorporating it by reference to a docket entry.

Plaintiff also counters the explanation provided by defendant Blood by stating that he "actually overhear[d] Defendant blood instructing another officer [to deprive him of recreation]."  Plf.'s Decl. (Dkt. No. 167) at

¶ 10.  Defendant Blood "categorically den[ies]" this allegation.  Blood Decl. (Dkt. No. 161, Attach. 3) at ¶ 13; Hoy Decl. Exhs. (Dkt. No. 161, Attach. 5) at 6, 20.  Although the court is mindful that, on a motion for summary judgment, it is "required to resolve all ambiguities and draw all permissible factual inferences" in favor of plaintiff, *Terry*, 336 F.3d at 137, it is also true that conclusory, self-serving affidavits that are unsupported by any factual detail are insufficient to give rise to a dispute of material fact.  *See Zappia Middle East Const. Co. Ltd. v. Emirate of Abu* Dhabi, 215 F.3d 247, 253 (2d Cir. 2000) ("The conclusory allegations in Mr. Zappia's affidavit are not sufficient to create a material issue of fact."); *Belcher v. Serriano*, No. 95-CV-1340, 1998 WL 173169, at *1 (N.D.N.Y. Apr. 9, 1998) (Pooler, J.) (holding that the plaintiff's complaint and an affidavit submitted in opposition to the defendants' motion for summary judgment were "[in]sufficient to overcome summary judgment," particularly where "his affidavit contains no factual support").  As a result, I find that no reasonable factfinder could conclude that plaintiff has satisfied the objective component of an Eighth Amendment deprivation.[9]

---

[9]     Because the record contains no evidence that relates to the extent of the alleged deprivation (*i.e.*, complete or partial), the availability of out-of-cell activities, or opportunities for in-cell exercise, I have not considered those additional, relevant factors.  *Davidson*, 968 F. Supp. 30.

With respect to the subjective element, there is not a single piece of evidence in the record before the court to suggest that defendant Blood knew of, and disregarded, a risk to plaintiff's safety by allegedly denying him recreation for, at most, one week. Indeed, neither plaintiff's third amended complaint nor his response in opposition to defendant Blood's pending motion allege that plaintiff's health or safety was at risk due to the alleged deprivation. *See generally* Dkt. Nos. 93, 167. As a result, I find that no reasonable factfinder could conclude that defendant Blood acted with the requisite deliberate indifference. *Farmer*, 511 U.S. at 837; *Jolly*, 76 F.3d at 480.

For all of these reasons, I recommend that plaintiff's Eighth Amendment claim against defendant Blood be dismissed.[10]

## IV.    SUMMARY AND RECOMMENDATION

The sole remaining claim in this action is premised upon the alleged failure of defendant Blood, a corrections officer at Green Meadow, to permit plaintiff to engage in recreation during, at most, a one-week period of keeplock confinement. Although I find that there is sufficient record evidence to demonstrate defendant Blood's personal involvement in an

---

[10]    In light of this recommendation, I have not addressed defendant Blood's qualified immunity argument.

alleged deprivation on November 7, 2006, that allegation, even if true, is insufficient to support an Eighth Amendment claim.   Accordingly, it is hereby respectfully

RECOMMENDED that defendant's motion for summary judgment (Dkt. No. 161) be GRANTED, and that the remaining portion of plaintiff's third amended complaint be DISMISSED in all respects.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby respectfully ORDERED that the clerk of the court correct the court's records to reflect that the correct name of the remaining defendant is Charles Blood; and it is further

ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:     February 25, 2013
           Syracuse, New York

David E. Peebles
U.S. Magistrate Judge